UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>DAVID NEWTON,<br><br>                       Debtor. | Chapter 13<br>Case No. 16 Br. 11304 (CGM) |
| DAVID NEWTON,<br><br>                       Appellant,<br><br>      -against-<br><br>BNH FIVE PACK LLC and<br>RIMBAMBITO LLC,<br><br>                       Appellees. | **ORDER**<br>17 Civ. 6379 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

        Appellant David Newton ("Debtor") appeals from an order of the United States Bankruptcy Court for the Southern District of New York entered on July 31, 2016, annulling nunc pro tunc the automatic stay that went into effect upon the May 5, 2016 filing of Debtor's Chapter 13 bankruptcy case. For the reasons stated below, this Court finds that Debtor's arguments on appeal are without merit, and the decision of the Bankruptcy Court will be affirmed.

## BACKGROUND

### I.   FORECLOSURE ON DEBTOR'S PROPERTY

        This case arises from a foreclosure on Debtor's property located at 1361 Teller Avenue, Bronx, New York. (Nadel Aff. (Dkt. No. 31-1) ¶¶ 1, 3, 16 Br. 11304)

On December 18, 2003, Debtor obtained a $225,000 loan from Flushing Savings Bank. (Id. ¶ 4) The loan note was secured by the Teller Avenue property. (Cunningham Decl. (Dkt. No. 40) ¶¶ 2, 6, 16 Br. 11304) The mortgage and note were subsequently transferred to Appellees BNH Five Pack LLC and Rimbambito LLC ("Creditors"). (Nadel Aff. (Dkt. No. 31-1) ¶ 4, 16 Br. 11304)

On August 1, 2009, Debtor defaulted on the loan. (Id.) On September 23, 2013, Creditors obtained a judgment of foreclosure against the Teller Avenue property from Supreme Court of the State of New York, Bronx County. (Judgment of Foreclosure (Dkt. No. 33-9), 16 Br. 11304)

## II.  FIRST BANKRUPTCY COURT ACTION

A foreclosure sale was scheduled for June 23, 2014. (Nadel Aff. (Dkt. No. 31-1) ¶ 5, 16 Br. 11304) That day, two hours before the scheduled sale, Debtor filed his first of three Chapter 13 bankruptcy cases ("First Case"). (Id. ¶ 5) Debtor's filing of the First Case triggered an automatic stay that prevented Creditors from moving forward with the foreclosure sale. (Id.; see also 11 U.S.C. § 362)

At that time, Debtor owed $514,460.97 on the loan, with $387,867.68 in arrears. (Nadel Aff. (Dkt. No. 10) ¶ 3, 14 Br. 11868) His Chapter 13 plan provided for payment of only $76,243.32 in arrears. (Ch. 13 Plan (Dkt. No. 9) at 4, 14 Br. 11868) On October 27, 2014, Creditors objected to this plan as insufficient to cure the amount in arrears. (Creditor Objection (Dkt. No. 10), 14 Br. 11868) They also noted that Debtor was not able to fund a feasible plan: Debtor had less than $700 in expendable income each month, and a feasible Chapter 13 plan would require him to pay at least $6,000 per month. (Id. ¶¶ 5-7; see also Debtor Income and Expenditures (Dkt. No. 10-2), 14 Br. 11868)

On December 3, 2014, Debtor filed an Amended Chapter 13 Plan, which again provided for the payment of only $76,234 in arrears. (Am. Ch. 13 Plan (Dkt. No. 17) at 4, 14 Br. 11868) On December 30, 2014, at Debtor's request, the First Case entered loss mitigation. (Nadel Aff. (Dkt. No. 12-1) ¶ 8, 16 Br. 10162) On June 12, 2015, the Bankruptcy Court directed Debtor to file an amended plan, but he did not comply with this order. (Status Report (Dkt. No. 47) ¶ 6, 14 Br. 11868) On October 29, 2015, Creditors reported that Debtor was four months in arrears on his post-petition payments, and requested that loss mitigation proceedings be terminated. (Id. ¶¶ 7, 9)

On December 10, 2015, the First Case was dismissed, because "[D]ebtor [] caused unreasonable delay that [was] prejudicial to [C]reditor" by failing to file all necessary documents. (Order of Dismissal (Dkt. No. 54), 14 Br. 11868)

### III. SECOND BANKRUPTCY COURT ACTION

On January 25, 2016, Debtor filed a second Chapter 13 bankruptcy case ("Second Case"), proceeding pro se. (Trustee Aff. (Dkt. No. 16), 16 Br. 10162) Debtor's filing of the Second Case triggered an automatic stay, preventing Creditors from proceeding with a foreclosure sale on the Teller Avenue property. (Nadel Aff. (Dkt. No. 12-1) ¶¶ 10, 12, 16 Br. 10162; see also 11 U.S.C. § 362) Debtor filed no documentation – such as information regarding his income and expenditures – in connection with the Second Case. (Nadel Aff. (Dkt. No. 12-1) ¶ 11, 16 Br. 10162)

Because the Second Case was filed within a year of the dismissal of the First Case, the second automatic stay expired by operation of law after 30 days. (Order (Dkt. No. 21) at 1, 16 Br. 10162; see also 11 U.S.C. § 362(c)(3)A)) Accordingly, on May 4, 2016, the

3

Bankruptcy Court issued an order confirming that Creditors could proceed with a foreclosure sale of the Teller Avenue property. (Order (Dkt. No. 21) at 1, 16 Br. 10162)

The foreclosure sale was scheduled for May 16, 2016. (Weiner Aff. (Dkt. No. 23-1) ¶ 4, 16 Br. 10162)

### IV.     THIRD BANKRUPTCY COURT ACTION

On May 5, 2016 – one day after the Bankruptcy Court issued an order confirming that the stay associated with the Second Case had expired – Debtor filed a third Chapter 13 bankruptcy case ("Third Case"). (Order (Dkt. No. 7) at 1, 16 Br. 11304) The Second Case remained open at that time. (Id.) Once again, Debtor did not file the necessary documentation in support of his petition. In particular, Debtor did not file documentation relating to his income and expenditures. Debtor also did not attend the required meeting with the Chapter 13 Trustee and his creditors. (June 10, 2016 Deficiency Notice (Dkt. No. 11), 16 Br. 11304; July 19, 2016 Trustee Aff. (Dkt. No. 13), 16 Br. 11304)

In a May 11, 2016 order denying Debtor's request for permission to pay the filing fee for the Third Case in installments, the Bankruptcy Court noted that a debtor cannot maintain multiple bankruptcy proceedings at the same time. (Order (Dkt. No. 7) at 1, 16 Br. 11304) In support of this rule of law, the Bankruptcy Court cited Turner v. Citizens Nat'l Bank of Hammond, 207 B.R. 373 (B.A.P. 2d Cir. 1997), with a parenthetical stating that "the debtor's second chapter 13 filing [in that case] was 'null and void from its inception and subject to dismissal for cause.'" (Id.)

In a May 13, 2016 letter, Creditors requested a "comfort order" stating that there was no automatic stay in effect in connection with the Third Case. (May 13, 2016 Cred. Ltr.

4

(Dkt. No. 8) at 1, 16 Br. 11304)  The Bankruptcy Court did not issue the requested order.  (July 18, 2017 Tr. (Dkt. No. 50) at 6, 16 Br. 11304)

On May 16, 2016, as scheduled, Creditors held the foreclosure sale for the Teller Avenue property.  (Nadel Aff. (Dkt. No. 31-1) ¶ 11, 16 Br. 11304)  The property sold for $675,000.  (Referee's Report of Sale (Dkt. No. 36-2) at 5, 16 Br. 11304)  This included a $65,515.82 surplus, which was submitted to the Bronx County Clerk's Office on June 24, 2016.[1]  (Status Report (Dkt. No. 36) at 1, 16 Br. 11304)

### V. CREDITORS' FIRST ATTEMPT TO OBTAIN NUNC PRO TUNC RELIEF FROM THE THIRD CASE'S AUTOMATIC STAY

On May 17, 2016, Creditors filed a motion for nunc pro tunc relief from the automatic stay in the Third Case.  (Mtn. (Dkt. No. 23), 16 Br. 10162)  However, Creditors filed their motion in the Second Case – which remained open at the time – instead of in the Third Case.

Creditors argued that the Third Case was null and void from its inception, because it was filed while the Second Case was pending.  (Weiner Aff. (Dkt. No. 23-1) ¶ 5, 16 Br. 10162)  In the alternative, Creditors argued that, pursuant to 11 U.S.C. § 362(c)(4)(A)(ii), the filing of the Third Case did not trigger an automatic stay, because Debtor had filed two other bankruptcy cases within the preceding year.  (Id.)

On June 2, 2016, the Bankruptcy Court denied Creditors' motion, finding that it had been filed in the wrong case.  As discussed above, Creditors sought relief from the automatic stay in the Third Case, but filed their motion in the Second Case.  (June 2, 2016 Hearing Tr. (Dkt. No. 30) at 8, 16 Br. 10162)  The Bankruptcy Court further ruled that 11 U.S.C.

---

[1]  The Debtor had valued the Property at $600,000 on Schedule A to his petition.  (July 18, 2017 Tr. (Dkt. No. 50) at 12, 16 Br. 11304)

5

§ 362(c)(4)(A)(ii) applies only where two other bankruptcy cases have been dismissed within a year of a third bankruptcy filing. Here, only the First Case had been dismissed when the Third Case was filed, so this provision did not apply. (Id. at 8) The Bankruptcy Court also noted that courts evaluate applications for nunc pro tunc stay relief pursuant to the factors set forth in In re Stockwell, 262 B.R. 275 (Bankr. D. Vt. 2001), but Creditors had not addressed these factors in their motion. (Id.) Accordingly, Creditors' motion for nunc pro tunc relief from the automatic stay was denied. (Id.)

On June 8, 2016, the Bankruptcy Court granted the Chapter 13 Trustee's motion to dismiss the Second Case, finding that Debtor had "caused unreasonable delay that is prejudicial to creditors" by failing to (1) appear at a meeting with his creditors; (2) file necessary documents in support of his petition; (3) file a Chapter 13 plan; and (4) make timely payments to the Chapter 13 Trustee. (Order of Dismissal (Dkt. No. 25), 16 Br. 10162)

## VI.   CREDITORS' SECOND ATTEMPT TO OBTAIN NUNC PRO TUNC RELIEF FROM THE THIRD CASE'S AUTOMATIC STAY

On October 11, 2016, Creditors filed a motion – in the Third Case – for nunc pro tunc relief from the automatic stay in the Third Case. (Mtn. (Dkt. No. 31), 16 Br. 11304) In their motion, Creditors explained that they had moved forward with the May 16, 2016 foreclosure sale

> [i]n reliance upon [the Bankruptcy Court's] order providing relief from the stay in the Second [C]ase, and the May 11, 2016 order in the Third Case [that cited Turner for the proposition that a bankruptcy petition is void ab initio when it is filed while the debtor has another bankruptcy case pending.] [Creditors] conclude[d] from the May 11, 2016 order that this Court did not recognize the validity of the Third Case . . . .

(Nadel Aff. (Dkt. No. 31-1) ¶ 11, 16 Br. 11304)

6

Creditors further argued that the automatic stay in the Third Case should be annulled under Stockwell,[2] because (1) Debtor filed his three bankruptcy petitions in a bad faith attempt to avoid foreclosure on the Teller Avenue property; (2) the property was not necessary to an effective reorganization of Debtor's estate, because reorganization was not feasible in any event; (3) Creditors would have been entitled to an order lifting the automatic stay if they had requested such an order prior to the foreclosure sale; and (4) denying Creditors' motion would impose a significant financial burden on them.  (Id. ¶¶ 11-27)

Debtor opposed Creditors' motion, arguing that (1) Creditors had notice of the automatic stay in the Third Case and thus should not have moved forward with the foreclosure sale; and (2) the property is Debtor's sole "source of revenue" and is therefore critical to the reorganization of his estate.  (Debtor Opp. (Dkt. No. 33) ¶¶ 28, 31, 16 Br. 11304)  Debtor also argued that he had not acted in bad faith in filing three separate bankruptcy cases.  According to Debtor, any deficiencies in Debtor's bankruptcy filings should be attributed to incompetent counsel in the First Case and Debtor's pro se status in the Second Case, and are not indicative of bad faith.  (Id. ¶¶ 12-20)

---

[2]  In Stockwell, the court lists seven factors to consider when a party requests nunc pro tunc relief from an automatic stay:

> "(1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay; (2) if the debtor has acted in bad faith; (3) if there was equity in the property of the estate; (4) if the property was necessary for an effective reorganization; (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation; (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; and (7) if the creditor has detrimentally changed its position on the basis of the action taken."

In re Stockwell, 262 B.R. at 281 (quoting In re Lett, 238 B.R. 167, 195 (Bankr. W.D. Mo. 1999)).

Debtor also argued that Creditors had engaged in bad faith conduct, imposing unfair loan terms that led to the foreclosure, using intimidation to drive away Debtor's tenants in the Teller Avenue property, and not cooperating during the loss mitigation proceedings in the First Case. (Id. ¶¶ 34, 39; Newton Aff. (Dkt. No. 33-8) ¶ 5, 16 Br. 11304)

On July 18, 2017, the Bankruptcy Court granted Creditors' motion for nunc pro tunc relief from the automatic stay in the Third Case. (July 18, 2017 Tr. (Dkt. No. 50), 16 Br. 11304) With respect to Debtor's complaints about Creditors' alleged misconduct, the court ruled that any such issue related to the First Case and "should have been raised in that case." The court also noted that, "under the Rooker-Feldman doctrine, [the Bankruptcy Court] lacks subject matter jurisdiction to consider any matter relating to the judgment of foreclosure." (Id. at 9 (citing McKithen v. Brown, 481 F.3d 89, 96 (2d Cir. 2005))

As to the Stockwell factors, the Bankruptcy Court found that the first factor – knowledge of the existence of the Third Case – weighed in Debtor's favor, as Creditors had actual knowledge of the Third Case at the time they conducted the foreclosure sale. (Id. at 10)

The second factor – whether Debtor acted in bad faith in filing the Third Case – weighed in Creditors' favor. (Id.) In determining whether Debtor had acted in bad faith, the Bankruptcy Court considered the factors set forth in In re C-TC 9th Avenue Partnership v. Norton Co., 113 F.3d 1304, 1310-11 (2d Cir. 1997):

> As relevant here, those factors[] include (1) the Debtor's inability to effectuate a plan, (2) whether the Debtor's financial condition is a two-party dispute between the Debtor and a secured creditor that can be resolved in the pending state foreclosure action, (3) whether the timing of the Debtor's filing evidences an intent to frustrate the legitimate efforts of the Debtor's secured creditor to enforce its rights, and (4) whether the Debtor has little or no cash flow. . . . [A]ll four of those factors favor [Creditors].
>
> . . . .

8

> [W]ith respect to an inability to effectuate a plan, the Debtor's plan . . . proposes to pay $50 a month for 36 months, or a total amount of $1,800. [He] does not propose to pay anything to [Creditors]. . . . It is clear that based on the record before the Court, [that] the plan is not feasible, and [it] does not appear that the Debtor has the ability to effectuate a confirmable plan.
>
> . . . .
>
> Second, this is primarily a two-party dispute between the Debtor and [Creditors]. Except for the debt of Con Edison, [Creditors] are the only creditors scheduled by the Debtor. The . . . Property is the Debtor's principal asset. The state court has already issued the judgment of foreclosure and this motion was precipitated by [Creditors] following through on that order, albeit mistakenly, to complete the foreclosure sale. Thus, this is clearly a two-party dispute between the Debtor and [Creditors].
>
> The timing of the filing evidences an intent to frustrate the foreclosure action. The current action was filed within two weeks of the Court entering an order that no stay was in effect in the [Second Case]. Moreover, it was filed while the [Second Case] was pending. That filing indicates an intent to frustrate [Creditors'] ongoing efforts to complete the foreclosure process.
>
> Finally, the Debtor has little or no cash flow. The Debtor lists on Schedule 1 of its petition monthly income of $3,000 with [$]800 of it coming from rental income, [$]1,700 from social security, and [$]500 from pension or retirement income. His expenses, which do not include any mortgage payment[,] total $2,950, leaving the Debtor with $50 per month of net income. As a result, the Debtor has minimal cash flow.

(Id. at 10-12) Having considered the C-TC 9th Avenue factors, the Bankruptcy Court concluded that Debtor had acted in bad faith in filing the Third Case.

The third Stockwell factor – whether Debtor had equity in the Teller Avenue property – also weighed against Debtor:

> The Debtor values the Property at $600,000 on Schedule A to his petition. The Property sold for $675,000 at the foreclosure sale . . . produc[ing] a surplus of $65,515.82 that the state court referee paid into the registry of the state court on June 24, 2016. . . . The foreclosure sale occurred 11 days after the filing date. As a result, although it appears that the Property had an equity cushion over and above the Movants' claim of approximately 10 percent, such amount is insufficient to provide adequate protection. In re Brampton Plantation LLC, 2011 WL 726805586, at * 7 (Bankr. Court, SD Georgia, December 6, 2011) (finding 10 percent equity cushion insufficient to provide adequate protection to the moving creditor); In re Tucker, 5 B.R. 180, 183 (S.D.N.Y. 1980) (finding a 7.4 percent

> equity cushion inadequate to provide adequate protection to the moving creditor, and granting request to modify the automatic stay).

(Id. at 12-13)

As to the fourth Stockwell factor – whether the Teller Avenue property is necessary for an effective reorganization of Debtor's estate – the Bankruptcy Court concluded that this factor also weighed against Debtor, because it did not appear that any reorganization would be possible with or without the property:

> The underlying debt obligation was to mature on January 1, 2019. . . . Accordingly, because the maturity date falls within the Debtor's five-year plan period, he would need to pay the debt in full, as part of the Chapter 13 plan. See 11 U.S.C. § 1322(b)(5). [Creditors'] Proof of Claim filed in the [First Case] reflects a total amount of $514,460.97 due and owing as of June 23, 2014. There's no indication that the Debtor has made any payments toward that amount since that time.
>
> Just to pay that amount would require a monthly plan payment in excess of $8,500. The Debtor's current plan provides him to pay $50 per month over the life of a 36-month plan, and listing the arrearages due to the Movants as unknown, and payments outside of the plan also as unknown. In this regard, the Debtor's case is similar to the situation that the Court faced in In re Cunningham, where that plan proposed to pay $100 per month for 36-months against arrearages of approximately $140,000. See Cunningham, 506 B.R. 345. In that case, the court found that such provision was "grossly insufficient to cure the creditor's substantial arrears" and that it did not satisfy that particular Stockwell factor. As with the Debtor in Cunningham, this Debtor has not established that he has a reorganization involving the Property "in prospect."

(Id. at 14-15)

The fifth factor – whether grounds for relief from the stay existed and whether a motion, if filed, would likely have been granted prior to the automatic stay violation – also weighed against Debtor:

> Failure to make post-petition mortgage payments is grounds for granting relief from the stay under 11 U.S.C. § 362(d)(1). See In re Schuessler, 386 B.R. 458, 480 (S.D.N.Y. 14 2008), where the court noted that "the failure to make mortgage payments constitutes cause for relief from the automatic stay, and one of the best examples of the lack of adequate protection under § 362(d)(1) of the Bankruptcy Code." See also In re Taylor, 151 B.R. 646, 648 (E.D.N.Y. 1993), where the

10

> court noted "[a] Debtor's failure to make regular mortgage payments as they come due, constitutes sufficient cause to lift the automatic stay.")
>
> . . . .
>
> Debtor has not made any post-petition payments. . . . As a result . . . the record of this case would support a finding under § 362(d)(1) that [Creditors] are not adequately protected because the Debtor has not made any post-petition payments and does not appear to be in the prospect of making any going forward.  And the 10 percent equity cushion would be insufficient to make up for those lack of payments.  Accordingly, [Creditors] have shown that application of the Stockwell factor cuts against the Debtor.

(Id. at 15-17)

The Bankruptcy Court next considered the sixth Stockwell factor, which is

> whether the failure to grant retroactive relief would cause unnecessary expense to [Creditors].  This factor weighs in favor of the Debtor. . . .  Here, [Creditors] had actual knowledge of the pending case, thus any costs in having to re-notice the sale if relief is not granted would result from [Creditors'] own actions and, thus, that factor cuts in favor of the Debtor.

(Id. at 17)

The last Stockwell factor is

> [w]hether [Creditors have] detrimentally changed [their] position on the basis of the action taken[.  T]hat factor also weighs in favor of the Debtor. . . . [A]gain, [Creditors] had actual notice of the pending case, thus, it's their own actions that result in the occurrence of costs, which militates against finding this factor in favor of [Creditors].

(Id. at 17)

Having considered all of the Stockwell factors, the Bankruptcy Court concluded that, on balance, they weigh in favor of granting Creditors' motion.  (Id. at 17-19)

On July 31, 2017, the Bankruptcy Court issued an order annulling the stay nunc pro tunc as of May 5, 2016, the date the Third Case was filed.  (Order (Dkt. No. 51), 16 Br. 11304)

11

### VII.    DEBTOR'S APPEAL

On August 22, 2017, Debtor filed the instant appeal. (Notice of Appeal (Dkt. No. 1), 17 Civ. 6379) Debtor's appeal raises the following issues:

1. Whether the Bankruptcy Court erred by not considering the alleged misbehavior of [Creditors] regarding the foreclosure of [Debtor's] property. . . .

2. Whether the Bankruptcy Court erred in its conclusion that the factors set forth in C-TC 9th Ave., 113 F.3d 1304 (2d Cir. 1997) favored [Creditors].

3. Whether the Bankruptcy Court erred in finding that the factors set forth in In re Stockwell, 262 B.R. 275 (D. Vermont, 2001) favored [Creditors].

4. Whether the Bankruptcy Court erred in finding that the automatic stay was annulled nunc pro tunc to the filing date of the bankruptcy petition.

(Debtor Br. (Dkt. No. 10) at 8-9, 17 Civ. 6379)

## DISCUSSION

### I.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158(a)(1), district courts are vested with appellate jurisdiction over bankruptcy court rulings. When sitting as an appellate court, the district court may "affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." 28 U.S.C. § 2106.

"A district court reviews a bankruptcy court's findings of fact for clear error . . . ." In re Bernard L. Madoff Inv. Sec. LLC, 531 B.R. 345, 350 (S.D.N.Y. 2015) (citing In re Bell, 225 F.3d 203, 209 (2d Cir. 2000); In re Metaldyne Corp., 421 B.R. 620, 624 (S.D.N.Y. 2009)). A finding of fact is clearly erroneous where,

> "although there is evidence to support it, the . . . court on the entire record is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). While the trial

> court's findings of fact are not conclusive on appeal, the party that seeks to overturn them bears a heavy burden. See 9C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2585 (1995). If two views of evidence are possible, the trial judge's choice between them cannot be clearly erroneous. See Anderson v. City of Bessemer, 470 U.S. 564, 574 (1985). "To be clearly erroneous, a decision must strike [the reviewing court] as more than just maybe or probably wrong; it must . . . strike [the reviewing court] as wrong with the force of a five-week-old, unrefrigerated dead fish." Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228 (7th Cir.), cert. denied, 493 U.S. 847 (1989).

H & C Dev. Group, Inc. v. Miner (In re Gregory & Dawn Miner), 229 B.R. 561, 565 (B.A.P. 2d Cir. 1999).

A bankruptcy judge's conclusions of law are reviewed de novo. Official Comm. of Unsecured Creditors of AppliedTheory Corp. v. Halifax Fund, L.P. (In re AppliedTheory Corp.), 493 F.3d 82, 85 (2d Cir. 2007).

## II.   WHETHER THE BANKRUPTCY COURT ERRED IN ANNULLING THE AUTOMATIC STAY

Debtor contends that the Bankruptcy Court erred in granting nunc pro tunc relief from the automatic stay.

### A.   Applicable Law

Under § 362(a) of the Bankruptcy Code, the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the [bankruptcy] case . . . ." 11 U.S.C. § 362(a)(2). The stay "is effective immediately upon the filing of the petition . . . ." Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 527 (2d Cir. 1994). Thus, a "foreclosure sale conducted after the commencement of [a] [b]ankruptcy [c]ase violates the automatic stay." In re Bresler, 119 B.R. 400, 402 (Bankr. E.D.N.Y, 1990).

"When an action has been commenced in violation of the stay, that action can only be made legitimate by an order retroactively validating the action." In re WorldCom, Inc.,

13

325 B.R. 511, 519 (Bankr. S.D.N.Y. 2005).  Under Section 362(d), a court can terminate, annul, modify, or condition the stay in a number of circumstances, including

> with respect to a stay of an act against real property under subsection (a), [on request of] a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved . . . multiple bankruptcy filings affecting such real property.

11 U.S.C. § 362(d)(4)(B).  "An 'annulment' of the automatic stay grants retroactive relief, thereby validating past proceedings or actions that would otherwise be deemed void." Koutsagelos v. PII SAM, LLC, No. 12 Civ. 1703 (NGG), 2013 WL 2898120, at *3 (E.D.N.Y. June 13, 2013).

In deciding whether to annul an automatic stay, "bankruptcy courts are advised to adopt a holistic approach, where 'the facts of each [case] will determine whether relief is appropriate under the circumstances.'"  Id. at *4 (quoting In re Mazzeo, 167 F.3d 139, 142 (2d Cir. 1999)).  "Courts within [the Second Circuit] have relied on the Stockwell factors to determine whether to annul [an] automatic stay."  In re Jean-Francois, 516 B.R. 699, 704 (E.D.N.Y. 2014) (citing In re Marketxt Holdings, Corp., 428 B.R. 579, 587 (S.D.N.Y. 2010); In re Cunningham, 506 B.R. 334, 343-44 (Bankr. E.D.N.Y. 2014); In re Ebadi, 448 B.R. 308, 319 (Bankr. E.D.N.Y. 2011); In re Pomerance, 2011 WL 1403034, at *4 (Bankr. S.D.N.Y. 2011)).

"[N]ot every Stockwell factor must be met in order for the bankruptcy court to annul the stay."  In re Jean-Francois, 516 B.R. at 706 (citing In re Marketxt Holdings, Corp., 428 B.R. at 589).  Indeed, "a finding of bad faith alone, even without the express consideration of other factors, has been deemed sufficient to grant relief from an automatic stay."  Koutsagelos, 2013 WL 2898120, at *4 (citing Corto v. Nat'l Scenery Studios, 1997 WL 225124, at *1 (2d Cir. 1997) (affirming bankruptcy court's lifting of automatic stay nunc pro tunc where debtor's petition was "collusive and filed in bad faith"); In re Plagakis, No. 03-CV-0728 (SJ), 2004 WL

14

203090, at *5 (E.D.N.Y. Jan. 27, 2004) ("[T]he Bankruptcy Court correctly found that Debtor's bad faith in filing for Chapter 13 relief justified dismissing his petition nunc pro tunc in order to validate the mortgage foreclosure sale.")).

### B.      Analysis

#### 1.      Debtor's Alleged Bad Faith

##### a.      Debtor's Prior Counsel and Creditors' Alleged Misconduct

Debtor argues that the Bankruptcy Court should have considered "the competence of Debtor's [] counsel [in the First Case and Debtor's] subsequent pro se [status] in the [Second Case]" in determining whether Debtor had acted in bad faith. (Debtor Br. (Dkt. No. 10) at 22, 17 Civ. 6379)  Debtor further contends that the Bankruptcy Court should have considered "the terms of the loan" underlying the foreclosure at issue, "the judgment of foreclosure, and [Creditors'] actions during negotiations for restructuring the loan[, which] all amounted to a form of bullying."  (Id. at 23)

Debtor does not explain how his prior lawyer was incompetent, how the terms of the loan were unfair, why the judgment of foreclosure was wrongful, or what Creditors did to bully Debtor while renegotiating his loan.  Instead, Debtor merely cites to his affidavit, which states that "[o]n May 20, 2016, persons claiming to be representatives of BNH Five Pack came to my house and stated that they own the house.  Further they told my tenants to leave the property."[3]  (Newton Aff. (Dkt. No. 33-8) ¶ 5, 16 Br. 11304)  Debtor's affidavit addresses Creditors' alleged conduct after the foreclosure sale, however, and is irrelevant.

---

[3]  Debtor goes on to state that "workmen" came to "[his] property" in June 2016, apparently to renovate the property.  Debtor "was very frightened due to their demeanor, physical abuse[,] and language that they used with [him]. . . . [Debtor's] tenants told [Debtor] that due to the demeanor of the workmen and men that said they were the owners of the building that they were afraid to

15

Neither in this court nor before the Bankruptcy Court has Debtor provided factual support for his complaints about his lawyer and claims of Creditor misconduct. (See Debtor Opp. to Mtn. for Nunc Pro Tunc Relief (Dkt. No. 33), 16 Br. 11304)

This Court concludes that the Bankruptcy Court did not err in refusing to consider these unsupported arguments in evaluating Debtor's bad faith.

### b. *C-TC 9th Avenue* Factors

Debtor argues that the Bankruptcy Court erred in concluding that the C-TC 9th Avenue factors support a finding of bad faith. (Debtor Br. (Dkt. No. 10) at 29-32, 17 Civ. 6379) Debtor concedes that the Third Case is, in essence, a "two-party" dispute, but argues that the Bankruptcy Court erred in finding that three other factors weighed against Debtor – namely, (1) Debtor's inability to effectuate a Chapter 13 plan; (2) the fact that Debtor filed his bankruptcy cases in an effort to delay the foreclosure sale; and (3) the fact that Debtor has little to no cash flow. (Id. at 31) Debtor does not explain why the Bankruptcy Court's findings as to these factors are erroneous.

This Court "review[s] the bankruptcy court's factual conclusions of bad faith under the clearly erroneous standard." In re C-TC 9th Ave. P'ship, 113 F.3d at 1312 n.6 (citing In re McLean Indus., Inc., 30 F.3d 385, 387 (2d Cir. 1994)). Here, the Bankruptcy Court's findings regarding Debtor's bad faith are not clearly erroneous.

As an initial matter, there is no evidence that Debtor would be able to fund a Chapter 13 plan with or without any income he could derive from the Teller Avenue property. Moreover, Debtor repeatedly filed bankruptcy cases shortly before Creditors attempted to

---

continue living" in the Teller Avenue property. (Newton Aff. (Dkt. No. 33-8) ¶¶ 6-8, 16 Br. 11304)

16

proceed with a foreclosure sale. For example, Debtor filed the First Case two hours before the scheduled foreclosure sale. And Debtor filed the Third Case just one day after the Bankruptcy Court confirmed that the stay associated with the Second Case had expired. Accordingly, "the timing of [D]ebtor's filing[s] evidences an intent to delay or frustrate the legitimate efforts of [Creditors] to enforce their rights." In re C-TC 9th Ave. P'ship, 113 F.3d at 1311. Finally, Debtor's last report concerning his finances reflects expendable income of only $50 per month, which the Bankruptcy Court properly characterized as little to no cash flow.

\*          \*          \*          \*

For the reasons stated above, the Court concludes that the Bankruptcy Court did not err in concluding that Debtor filed the Third Case in bad faith.

### 2. Other *Stockwell* Factors

Debtor argues that the Bankruptcy Court erred as to other Stockwell factors. (Debtor Br. (Dkt. No. 10) at 9, 17 Civ. 6379) For example, Debtor contends that the Bankruptcy Court did not give adequate weight to the first factor – Creditors' actual knowledge of the Third Case and the automatic stay. (Id. at 28-29) According to Debtor, the Bankruptcy Court also erred in disregarding Debtor's equity in the Teller Avenue property, and in finding that the property was not necessary for the effective reorganization of Debtor's estate. (Id. at 32-33) Finally, Debtor argues that the Bankruptcy Court erred in concluding that Creditors would have been entitled to an order lifting the stay prior to the foreclosure sale, on the basis of Debtor's failure to make post-petition mortgage payments. (Id. at 34) According to Debtor, he "could not make these payments because his tenants were convinced to either leave the [Teller Avenue property] or c[e]ase paying [rent to Debtor]" as a result of Creditors' wrongful actions. (Id. at 34-35)

The decision to grant nunc pro tunc relief from an automatic stay is reviewed for an abuse of discretion. In re Aquatic Dev. Grp., Inc., 352 F.3d 671, 679 (2d Cir. 2003). This Court concludes that the Bankruptcy Court did not abuse its discretion here.

As an initial matter, "a finding of bad faith alone, even without the express consideration of other factors, has been deemed sufficient to grant relief from an automatic stay." Koutsagelos, 2013 WL 2898120, at *4 (citing Corto, 1997 WL 225124, at *1; In re Plagakis, 2004 WL 203090, at *5). Here, as the Bankruptcy Court found, there was ample evidence of Debtor's bad faith. Accordingly, nunc pro tunc relief from the automatic stay was appropriate on this basis alone. In any event, Debtor's arguments as to the other Stockwell factors are not persuasive.

The Bankruptcy Court cannot be said to have abused its discretion by not putting as much weight on the first factor – Creditors' knowledge of the Third Case – as Debtors would have liked. This is especially true given the Bankruptcy Court's suggestion, in its May 11, 2016 order, that Debtor's Third Case was void ab initio.

Debtor further contends that he might have had more than 10% equity in the Teller Avenue property, because "[i]t is common knowledge that a foreclosure sale generates significantly less of a profit than a non-foreclosure sale." (Debtor Br. (Dkt. No. 10) at 33, 17 Civ. 6379) Debtor's speculation as to how much the property might have sold for in a non-foreclosure sale is not sufficient to disturb the Bankruptcy Court's well-reasoned calculation of Debtor's equity, however, and certainly does not demonstrate that the Bankruptcy Court's conclusion was clearly erroneous. See In re Premier Operations, 294 B.R. 213, 217 (S.D.N.Y. 2003) ("On an appeal from a bankruptcy court's final order, the district court reviews the bankruptcy court's findings of facts for clear error.")

Finally, this Court sees no error in the Bankruptcy Court's finding that Creditors would have been entitled to an order lifting the automatic stay if they had sought such an order before the foreclosure sale.  Pursuant to 11 U.S.C. § 362(d)(1), a court can annul an automatic stay "for cause, including the lack of adequate protection of" a creditor's interests.  11 U.S.C. § 362(d)(1).  "[T]he failure to make mortgage payments constitutes 'cause' for relief from the automatic stay and is one of the best examples of a 'lack of adequate protection' under Section 362(d)(1) of the Bankruptcy Code."  In re Schuessler, 386 B.R. 458, 480 (Bankr. S.D.N.Y. 2008) (citing In re Taylor, 151 B.R. 646, 648 (E.D.N.Y. 1993) ("debtor's failure to make regular mortgage payments as they become due constitutes sufficient 'cause' to lift the automatic stay")).  Here, it is undisputed that Debtor did not make the required mortgage payments.  Accordingly, the Bankruptcy Court concluded that Creditors would have been entitled to an order lifting the automatic stay for cause prior to the foreclosure sale.

Debtor argues, however, that he could not make the necessary post-petition payments because Creditors wrongfully induced his tenants in the Teller Avenue property to either move out or stop paying him rent.  (Debtor Br. (Dkt. No. 10) at 34-35, 17 Civ. 6379)  In support of these allegations, Debtor submits his affidavit, which asserts that Creditors' representatives intimidated Debtor's tenants after the foreclosure sale took place.  (See Newton Aff. (Dkt. No. 33-8), 16 Br. 11304)  Debtor's allegations about what Creditors did after the foreclosure sale does not explain why Debtor did not make his mortgage payments before the foreclosure sale.

\*          \*          \*          \*

The Bankruptcy Court did not err in concluding that the Stockwell factors favor Creditors, and did not abuse its discretion in awarding nunc pro tunc relief from the automatic stay in the Third Case.

## **CONCLUSION**

For the reasons stated above, the judgment of the Bankruptcy Court for the Southern District of New York is affirmed. This appeal is dismissed in its entirety and the Clerk of Court is directed to close this case.

Dated: New York, New York
May 26, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge